UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Marianne Thiry, | Case No. 0:15-cv-03544-JRT-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| United of Omaha Life Insurance Company, and Meridian Behavioral Health, LLC, Long-term Disability Plan, | |
| Defendants. | |

Matthew B. Newman, Matthew B. Newman, P.A., counsel for plaintiff

Todd Brenner, Brenner Hubble; and Mark Scholle, Scholle Law Firm, Ltd., counsel for defendant

## I.   INTRODUCTION

This is an ERISA[1] case involving the denial of Marianne Thiry's application for long-term disability benefits (hereafter "LTD benefits"). The parties have made cross-motions for summary judgment, ECF Nos. 29 & 32, which the District Court has referred to the undersigned for a report and recommendation under 28 U.S.C. § 636, 3/2/17 Order, ECF No. 37. As clarified in the parties' summary judgment briefing,[2]

---

[1]   Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

[2]   These briefs include Ms. Thiry's memorandum in support of her motion (Pl.'s Mem., ECF No. 34), United's response in opposition to that motion (Def.'s Resp., ECF No. 35), United's memorandum in support of its motion for summary judgment (Def.'s Mem., ECF No. 29), and Ms. Thiry's response in opposition to that motion (Pl.'s Resp., ECF No. 36).

1

Ms. Thiry received short-term disability benefits from the defendants. She also received two years of LTD benefits from the defendants for disability relating to mental-health issues, but the ERISA policy limited such payments to twenty-four months. The only dispute remaining between the parties is whether the policy required the defendants to pay additional benefits for Ms. Thiry's alleged physical disability, which would not be subject to the two-year cap. For the reasons that follow, the Court recommends that Ms. Thiry's motion be denied and the defendants' motion be granted.

## II.  BACKGROUND

Meridian Behavioral Health (hereafter "Meridian") employed Ms. Thiry as a Director of Operational Development from October 2008 through November 7, 2014. Administrative Record ("AR") 152, ECF No. 42. Ms. Thiry participated in Meridian's Long-term Disability Plan (hereafter the "Plan"), and was covered under a Group Insurance Policy (hereafter "LTD Policy") that entitled a participant in the Plan to receive benefits if she became disabled. *See* AR 2967-97 (including the LTD Policy). Ms. Thiry stopped working on August 5, 2014, and applied for short-term disability benefits based on mental-health issues. Those short-term disability benefits were eventually granted by United of Omaha Life Insurance Company (hereafter "United") after this lawsuit was commenced, and are no longer at issue.

Ms. Thiry completed an application for LTD benefits in November 2014. *See, e.g.*, AR 152-65. On March 12, 2015, Ms. Thiry's counsel sent United, the plan administrator, a letter concerning the claim for LTD benefits. AR 2524-53. In the relevant portion of this letter, Ms. Thiry stated that she was entitled to benefits under the LTD Policy based on the disabling effects of pain and fatigue related primarily to fibromyalgia and related physical conditions.

On June 10, 2015, United denied Ms. Thiry's application for LTD benefits. AR 1502-12. Following an appeal, on December 30, 2015, United partially backed away from that decision and granted Ms. Thiry's claim for LTD benefits relating to

mental-health issues. However, the relevant language of the LTD Policy limited payment of those mental-health benefits to a period of twenty-four months. AR 1257-60. With respect to Ms. Thiry's claim for LTD benefits due to physical impairments, United stood by its original denial.

> Our review has not found physical restrictions or limitations, due to fibromyalgia or any other conditions, which would preclude Ms. Thiry from performing the Material Duties of her Regular Occupation, therefore no benefits are payable due to the diagnosis of fibromyalgia.

AR 1259-60.

United did not dispute that Ms. Thiry has fibromyalgia, but found that it was not disabling. United based its decision, in large part, on the conclusions of Dr. Alfred Becker, who conducted an independent review of the medical information Ms. Thiry had submitted. AR 1326-37. Of particular relevance here, Dr. Becker observed that one of Ms. Thiry's treating physicians, Dr. Carolyn Kampa, had conducted a positive trigger point test in January 2015 relating to her diagnosis of fibromyalgia. However, Dr. Becker concluded that "[p]ositive trigger points alone would not constitute impairment," and noted the lack of objective physical examination findings and clinical evidence that would substantiate the level of restrictions or limitations Ms. Thiry alleged. AR 1335-37.

In this lawsuit, Ms. Thiry argues that United's denial of LTD benefits must be overturned. She contends that it was unreasonable for United to require objective or clinical evidence demonstrating impairment because such evidence is rare or non-existent in fibromyalgia cases. Ms. Thiry also asserts that United's decision was unreasonable because, in support of her claim, she submitted a structured questionnaire from Dr. Kampa and a written statement from her husband that should have satisfied United's demand for clinical or objective proof of disability.

3

## III. DISCUSSION

Although Ms. Thiry argues that she has physical limitations of such severity that she is unable to continue working and is entitled to benefits under the LTD Policy, the Court's review is deferential. The Court is limited to determining whether United abused its discretion when it determined that she was not entitled to benefits. Because United's requirement for greater proof of disability was not unreasonable, and because there was substantial evidence to support its decision, the Court concludes that the denial of benefits should be affirmed.

### A. Standard of Review

The LTD Policy gave United discretion to interpret eligibility for LTD benefits according to the following provision:

> By purchasing the Policy, the Policyholder grants [United] the discretion and the final authority to construe and interpret the Policy. This means that [United has] the authority to decide all questions of eligibility and all questions regarding the amount and payment of any Policy benefits within the terms of the Policy as interpreted by [United]. Benefits under the Policy will be paid only if [United decides], in [its] discretion, that a person is entitled to them. In making any decision, [United] may rely on the accuracy and completeness of any information furnished by the Policyholder, You or any other third party.

AR 2988. Because the LTD Policy gives United this discretion, this Court's review is deferential and overturning United's decision requires the Court to find that United abused its discretion. *See Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 986-87 (8th Cir. 2014) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

Under the abuse of discretion standard, the Court "'will uphold [United's] decision to deny benefits if it is reasonable.'" *Johnson*, 775 F.3d at 989 (quoting *Maune v. Int'l Bhd. of Elec. Workers, Local No. 1 Health & Welfare Fund*, 83 F.3d 959, 963 (8th Cir. 1996)). The Court "'measure[s] reasonableness by whether substantial evidence exists to support the decision, meaning more than a scintilla but less than a preponderance.'" *Id.* (quoting *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575,

4

583 (8th Cir. 2008)). "'If substantial evidence supports the decision, it should not be disturbed even if a different, reasonable interpretation could have been made.'" *Id.* (quoting *McGee v. Reliance Standard Life Ins. CO.*, 360 F.3d 921, 924 (8th Cir. 2004)).

### B. *Pralutsky v. Met Life* and Proof of Disability in Fibromyalgia Cases

Ms. Thiry argues that in fibromyalgia cases "administrators may not require objective proof of the extent of a disabling condition," Pl.'s Mem. at 26, and United disagrees with this assertion. Both parties rely heavily on *Pralutsky v. Metro. Life Ins. Co.*, 435 F.3d 833 (8th Cir. 2006), to support their competing positions. Indeed, this issue and the impact of *Pralutsky* on the analysis are at the very heart of the parties' dispute about Ms. Thiry's entitlement to benefits. For several reasons, *Pralutsky* does not help Ms. Thiry, and United's position on this issue is not an abuse of discretion.

Ms. Pralutsky claimed to be disabled by fibromyalgia, a diagnosis with which the administrator eventually agreed. *Pralutsky*, 435 F.3d at 835, 837. The plan required Ms. Pralutsky "to provide documented proof of her Disability and proof was defined to include the date disability started, the cause of disability, and the prognosis." *Id.* at 835 (quotations and alterations omitted). The administrator denied her claim initially, and Ms. Pralutsky indicated a desire to appeal the decision. The administrator informed her that she would need to support her claim with "treatment records from [her] treating physicians that indicate [her] current treating diagnosis, restrictions and limitations, and ongoing current treatment plans." *Id.* at 836 (quotations omitted). After Ms. Pralutsky presented additional information from her providers, the administrator persisted in its denial of her claim. The administrator determined that she failed to provide objective medical findings to support significant impairment. *Id.* at 837.

Ms. Pralutsky filed suit, and the district court granted her motion for summary judgment. The district court concluded that the administrator committed a serious procedural irregularity by insisting that she provide objective evidence of her disability due to fibromyalgia, justifying a less deferential standard of review. *Pralutsky*, 435 F.3d

5

at 837. Applying that less deferential standard, the district court determined that the administrator erroneously denied Ms. Pralutsky's claim. *Id.* The Eighth Circuit reversed, finding first that no procedural irregularity altered standard of review from abuse of discretion and second that the administrator reasonably determined that the plan required presentation of objective medical evidence to prove a claim of disability. *Id.* at 838. The court then affirmed the administrator's determination that the information Ms. Pralutsky and her physicians supplied did not establish that her limitations were severe enough to meet the plan's definition of disability. *Id.* at 839-41.

Nothing in *Pralutsky* stands for the proposition that plan administrators are precluded from requiring objective proof of functional limitations due to fibromyalgia or a similar a disabling condition. Such a rule appears nowhere in the text of *Pralutsky* and cannot be inferred from its reasoning. In fact, *Pralutsky* notes: "we cannot say, as a general matter, that it is unreasonable for [the administrator] to interpret the plan to require provision of objective evidence as part of the 'proof' and 'documentation' that the claimant must submit." 435 F.3d at 839. Indeed, despite Ms. Thiry's efforts to re-characterize *Pralutsky*, it supports United's position rather than her own.

Here, United imposed a requirement for the submission of objective or clinical evidence that is materially indistinguishable from the administrator's requirement in *Pralutsky*. There is no dispute that Ms. Thiry suffers from fibromyalgia, and United did not find that Ms. Thiry is ineligible for benefits because she failed to prove her fibromyalgia diagnosis with objective evidence. *Pralutsky*, 435 F.3d at 839 (explaining that the administrator was not requiring "an impossible level of objective proof that [the plaintiff] suffered from fibromyalgia"). Instead, the record demonstrates that United was seeking "substantiation of the extent of [Ms. Thiry's] disability" by asking for medical documentation supporting her functional limitations. *See, e.g.*, AR 1510 ("Regarding the diagnosis of fibromyalgia, while the examination did reveal positive tenderness over trigger points, there was no documentation of motor deficits, nor was there any atrophy to support a reduction in the use of the involved muscle groups."); AR 1335-37 (concluding that "[p]ositive trigger points alone would not constitute

6

impairment," and noting absence of exam findings and clinical evidence to support the level of alleged limitations). United reasonably determined that, if Ms. Thiry was indeed as physically limited as she had asserted, medical documentation would have demonstrated objective proof (such as muscular atrophy) that she had been significantly inactive.

*Pralutsky* is not alone in permitting an ERISA administrator to do exactly what United did in this case. Other decisions recognize that a plan administrator may reasonably require objective evidence showing that an individual with fibromyalgia is so limited that she is unable to work. *Johnson v. Metro Life Ins.*, 437 F.3d 809, 814 (8th Cir. 2006) (explaining that "[i]n *Pralutsky*, we determined that the plan administrator could require objective evidence of a disability, even when the claimant's alleged disability stemmed from fibromyalgia, so long as the administrator notified the claimant that her file lacked the required objective evidence"); *Eastman v. Prudential Ins. Co. of Am.*, 2008 WL 250597, at *12 (D. Minn. Jan. 29, 2008).[3] For these reasons, the Court rejects Ms. Thiry's contention that United acted unreasonably in requiring objective or clinical evidence to prove she was disabled under the LTD Policy.

### C. Alleged Failure to Provide Notice

Ms. Thiry next argues that United's denial was unreasonable because it failed to clearly communicate that objective or clinical proof of Ms. Thiry's limitations would be required to prevail on her claim for LTD benefits. *See* Pl.'s Mem. at 21-22; Pl.'s Resp. at 2-7, 12. This argument is also unpersuasive.

Ms. Thiry suggests that United's failure to include the word "objective" and "clinical" in its initial denial letters deprived her of reasonable notice of what would be

---

[3]   Ms. Thiry discusses these cases at some length in her response to United's motion for summary judgment. Pl.'s Resp. at 13-17. However, the Court does not find Ms. Thiry's characterization of these cases persuasive. In particular, the Court rejects Ms. Thiry's implicit suggestion that these decisions hold that a positive trigger point test is equivalent to a determination of functional limitations.

7

required to support her claim for LTD benefits. *See* Pl.'s Resp. at 3-4. In its June 10, 2015 denial letter, United informed Ms. Thiry and her counsel that in reaching its decision it "review[s] the medical documentation in the file to determine [her] maximum work capacity if the documented restrictions and limitations are supported by the medical evidence." AR 1503. The letter goes on to observe that there was a positive trigger-point test from Dr. Kampa, but "physical examination showed no joint deformity, redness or effusions," and notes the absence of motor deficits or atrophy during a December 22, 2014 visit with one of her providers. AR 1510. In the explanation of her appeal rights, she was "encouraged to submit any additional medical records that may be available to support [her] appeal[, which] may include, but are not limited to: treatment notes, test results, consultation records, therapy notes, etc." AR 1511. In addition, the LTD Policy itself requires a claimant to provide proof of loss including supporting information of the type that United found was missing here.[4] Combined, these explanations in the denial letter and the proof of loss language in the LTD Policy were sufficient to place Ms. Thiry on notice that objective medical documentation of functional limitations would be required.

Ms. Thiry cites *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617 (8th Cir. 1998), to support her argument, *see* Pl.'s Resp. at 12, but *Marolt* is easily distinguishable. *Marolt* involved an ERISA defendant's attempt to introduce a new justification for denial of retirement benefits for the first time during litigation. Because the defendant had never given the plaintiff notice during the administrative process that her claim would be governed by the terms of the summary plan description, the Eighth Circuit concluded that the defendant "sandbagged [the plaintiff] by after-the-fact interpretations devised for purposes of litigation." *Id.* at 620. That post-hoc rationale

---

[4] AR 677 ("Disability and other benefits will be paid after We receive acceptable proof of loss. Benefits will be paid only if We determine that the claimant is entitled to benefits under the terms of the Policy. We may require supporting information which may include, but is not limited to, the following: a) clinical records; b) charts; c) x-rays; d) Proof of Earnings; and e) Other diagnostic aids.").

was not appropriate because it deprived the claimant of an opportunity to understand what would be required to support her claim. *See id.* Here, United has not introduced a new requirement during this litigation that was absent from the rationale provided during the administrative review process; instead, it has maintained a consistent rationale for denial of the claim throughout the process.

The Eighth Circuit's decision in *Pralutsky* is also instructive on this issue. The policy language in *Pralutsky* required the claimant to submit "proof" and "documentation" of disability, and the court concluded that the administrator was free to interpret such language as requiring objective evidence. *Pralutsky*. *See* 435 F.3d at 839 ("[W]e cannot say, as a general matter, that it is unreasonable for MetLife to interpret the plan to require provision of objective evidence as part of the "proof" and "documentation" that a claimant must submit."). The LTD Policy here similarly required "proof of loss," pursuant to which United determined that Ms. Thiry needed to provide objective evidence substantiating functional limitations. Accordingly, "[t]his is not a case in which [United] expected [Ms. Thiry] to guess what evidence would satisfy the plan administrator." *Pralutsky*, 435 F.3d at 840. Ms. Thiry was given written decisions explaining why her claim was denied, was advised of appeal procedures, and was given opportunities to provide evidence in support of her claim. *See, e.g.*, *Anderson v. U.S. Bancorp*, 484 F.3d 1027, 1033-34 (8th Cir. 2007) (rejecting the participant's argument that the administrator failed to engage in a "meaningful dialogue" regarding his claim for benefits where he received written notice setting forth the basis for the denial of the claim, advised of appeal procedures, was represented by counsel throughout, and was given opportunities to submit evidence in support of his claim).

For these reasons, the Court does not agree that United "sand-bagged" Ms. Thiry by offering a post-hoc rationale for its denial of her claim. No greater explanation for United's actions was required than the information it provided Ms. Thiry.

### D. Substantial Evidence

Finally, Ms. Thiry argues that, even if United was permitted to demand objective and clinical evidence in support of her claim of disability, she readily met that standard. Pointing to Ms. Thiry's lengthy written statement regarding her symptoms, Dr. Kampa's responses to a structured questionnaire, and Tom Thiry's written statement about his wife's struggles, Ms. Thiry asserts that the evidence she was disabled is "overwhelming." *See* Pl.'s Mem. at 30; *see also id.* at 8-20 (discussing evidence in the record demonstrating "functional limitation"). The Court disagrees.

There is no doubt that Ms. Thiry provided evidence to United that supported her claim for benefits. Indeed, her written statement about her symptoms and description of her daily life indicates that she struggles a great deal. Ms. Thiry describes near constant significant pain, fatigue, insomnia, and difficulty thinking and concentrating. AR 2502-05. She explains that she has difficulty engaging in household tasks like completing paperwork, grocery shopping, cooking, grabbing, carrying, and lifting objects, and getting dressed. *See* AR 2514-15. Mr. Thiry communicated observations about changes in his wife's experiences, including: watching her previously active lifestyle deteriorate; seeing her cry due to pain; having her miss family functions; and losing strength that previously allowed her to do household chores. AR 2517-18.

However, as noted above, review in this context is "highly deferential." *See Khoury v. Grp. Health Plan*, 615 F.3d 946, 952 (8th Cir. 2010). The Court cannot disturb the administrator's conclusions merely because evidence exists that points to another reasonable outcome. *Schmitz v. Sun Life Assur. Co. of Canada*, 57 F. Supp. 3d 1095, 1117 (D. Minn. 2014). Having carefully reviewed the record, the Court finds that United's decision was reasonable and supported by substantial evidence.

When United initially denied Ms. Thiry's LTD benefits claim on June 10, 2015, it correctly observed that a report from Ms. Thiry's psychiatric nurse, Barbara Saiki, did not mention any physical restrictions or limitations. The same was true of the

statement provided by licensed social worker Timothy Day, who simply referred to nurse Saiki's report. United further noted a lack of x-ray or MRI results that would substantiate physical limitations from impairments other than fibromyalgia. Similarly, a March 12, 2015 full body bone scan provided no abnormal findings. A Bruce Protocol Treadmill Test on May 16, 2014 indicated that Ms. Thiry was able to exercise for just over ten minutes. And as noted above, United found that despite the positive trigger-point test for fibromyalgia, a physical examination revealed no joint deformity, redness or effusions and there were no motor deficits or muscular atrophy to support a conclusion that Ms. Thiry had been substantially unable to function as alleged. AR 1502-12.

Following United's initial denial, Dr. Becker's review further supports the decision. AR 1326-37. He reviewed a comprehensive set of Ms. Thiry's medical records, her statement, her counsel's statement, and her husband's statement, and similarly found a lack of medical support for functional limitations from fibromyalgia or any other issues. AR 1335. In particular, Dr. Becker noted that the positive trigger point test, by itself, would not constitute impairment. AR 1335. Dr. Jegapragasan, a rheumatologist who diagnosed Ms. Thiry with fibromyalgia, told Dr. Becker that he did not believe Ms. Thiry was disabled by virtue of the fibromyalgia diagnosis.[5] AR 1335. United ultimately incorporated Dr. Becker's reasoning into its final decision determining that Ms. Thiry is not disabled by fibromyalgia. AR 1262. Given that the Court has determined that United acted reasonably in requiring the submission of clinical or objective evidence of functional limitations, the medical records and findings reflected in United's denial letters provide substantial evidence to support the final decision that Ms. Thiry was not entitled to LTD benefits.

---

[5]  Although Ms. Thiry argues that this statement should be understood to mean that Dr. Jegapragasan's clinic *never* recommends a finding of disability for fibromyalgia, *see* Pl.'s Resp. at 6, she points to nothing in the record supporting such an interpretation of Dr. Becker's note.

11

Dr. Kampa's questionnaire does not change the Court's conclusion. Dr. Kampa opined that: Ms. Thiry is an accurate historian of her condition and limitations; she is not a malingerer; she would need frequent and lengthy breaks for every hour worked; and her medical conditions would result in ongoing pain, fatigue, and memory/cognitive issues. AR 2554-55. Dr. Kampa also opined that Ms. Thiry would not be able to perform her previous job with Meridian. AR 2568. To the extent that Ms. Thiry argues that United was required to accept the opinions reflected in Dr. Kampa's questionnaire, this Court disagrees. As acknowledged by Ms. Thiry in her LTD benefits application, AR 2527, Dr. Kampa's questionnaire is based on Ms. Thiry's subjective reports.[6] The entire "functional limitations" section of the questionnaire consists of Ms. Thiry's own statements and Dr. Kampa's marking of a box indicating that each statement is "consistent with her medical condition." AR 2555-67. *See Daigle v. Hartford Life & Acc. Ins. Co.*, 452 Fed. App'x 689, 690 (8th Cir. 2011) ("[The administrator] was not required to accord special weight to the opinions of [the claimant's] primary care physicians, especially where they appeared to be based mostly on his subjective reports."). Moreover, the record supports Dr. Becker's conclusions regarding Ms. Thiry's physical limitations, validating United's decision to rely upon his opinion even to the exclusion of Dr. Kampa's opinions. *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006) ("When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial.") (citing *Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002)).

The record also contains evidence suggesting that Ms. Thiry may not be as physically limited by her symptoms as alleged. One of United's reviewing physicians noted that "[s]he exercises heavily on a regular basis which is not consistent with

---

[6] Dr. Becker also observed that Dr. Kampa's follow up notes did not reflect the results of physical exams. AR 1335.

impaired functioning." AR 648; *see also* AR 639-40 (discussing exercise program involving "hot yoga" and walking); AR 643 ("The claimant reports being quiet [sic] active with outside yard work, doing an exercise work out three times a week for 60-90 minutes at a time and walking when not doing exercise work out."). Ms. Thiry stated that she is no longer as active with yoga and rarely gets exercise due to her pain, AR 2515, but this does not mean it was unreasonable for United to conclude that she had not adequately proven she had functional limitations that left her unable to work.

Ms. Thiry finally suggests that United failed even to consider her own statement, her husband's statements, and Dr. Kampa's questionnaire, Pl.'s Mem. at 20, 25-29, and performed an insufficient and cursory review, Pl.'s Resp. at 11. However, the record demonstrates that United reviewed all the evidence available before its initial denial of her LTD benefits claim on June 10, 2015, AR 1503-05, and its December 30, 2015 denial of her appeal, AR 1260-61. *See also* AR 3124-28 (consultant review listing evidence considered and concluding "there are no identifiable restrictions or limitations"); *id.* at 1326-37 (same). To the extent Ms. Thiry suggests that United's failure to mention each piece of evidence in its denial letters requires reversal, the Court disagrees. *Waldoch v. Medtronic, Inc.*, 953 F. Supp. 2d 979, 1006 (D. Minn. 2013) ("The record reveals that [the administrator] did consider all of the evidence submitted, even if not every item was specifically mentioned in the notification letter.") (citing *Midgett v. Washington Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 896 (8th Cir. 2009)).

## Conclusion and Recommendation

In sum, the Court finds that United did not abuse its discretion in denying Ms. Thiry's claim for long-term disability benefits due to her physical impairments. Based on the foregoing, the Court recommends that:

1. Plaintiff's Motion for Summary Judgment, **ECF No.32**, be **DENIED**; and

2. Defendant's Motion for Summary Judgment, **ECF No. 29**, be **GRANTED**.

Date: May 30, 2017                                    *s/ Katherine Menendez*
                                                      Katherine Menendez
                                                      United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.